IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

|  |  |
|---|---|
| ROGAN SMITH and KALEIGH SMITH, Individually and in their marital capacity, | No. 2:21-cv-01732-HL |
| Plaintiffs, | **OPINION AND ORDER** |
| v. |  |
| DANIEL YANES, in his individual and official capacity, CITY OF PRINEVILLE, by and through Prineville Police Department, and CROOK COUNTY, by and through Crook County Jail, |  |
| Defendants. |  |

HALLMAN, United States Magistrate Judge:

Plaintiffs Rogan and Kaleigh Smith are husband and wife and bring this action against

Daniel Yanes, the City of Prineville, and Crook County ("Defendants") asserting a claim for

excessive force under 42 U.S.C. § 1983 and state tort claims. Before this Court is Plaintiffs'

Motion to Amend, ECF 44, and Defendants' Motion for Summary Judgement, ECF 27. For the

reasons discussed below, Plaintiffs' motion is DENIED, and Defendants' motion is DENIED in part and GRANTED in part.

## BACKGROUND

The following facts are based on evidence submitted by both parties and are undisputed unless otherwise noted:

On December 3, 2019, Prineville police officer Daniel Yanes ("Yanes") was dispatched to investigate a report of a road rage incident involving a physical altercation between Rita Smith ("Rita") and another driver. Yanes Depo. 18, ECF 27-3; Rita Smith Depo. 32, ECF 33-1. Rita's boyfriend was a passenger in her car and called 911 to report that Rita had been hit in the head and had a cut on her arm. *Id.*; Campbell Decl. Ex. 1 at 1, ECF 29-1. When Yanes arrived at the scene, a large man was speaking loudly to a male and female, leaning toward them, and there were two or three subjects a few feet away from them. Campbell Decl. Ex. 2 at 17:31:01-10. Yanes stated in his deposition that he felt like the man "was the primary aggressor in this incident," and "was the suspect in [his] eyes." Yanes Depo. 7. In fact, the man was Rita's brother, Plaintiff Rogan Smith ("Smith"), who was at the scene because Rita had called him for help after her incident with the other driver. Rita Smith Depo. 31. Yanes described Smith as a "large male subject" who "looked like he was clenching his fists . . . and was yelling[.]" Yanes Depo. 6-7. In his incident report, Yanes wrote, "I observed [the man] was highly agitated and argumentative while standing in an aggressive stance." *Id.*

In the video of the incident that was taken from Yanes' body camera, Smith looks upset, agitated, and is confronting and gesturing toward a man and woman who are standing passively against a parked vehicle with other subjects standing close by. Campbell Decl. Ex. 2 at 17:31:01-10. When Yanes stepped up to Smith, he placed his hand on Smith's arm saying, "hello, sir, sir,

sir," and "hey, can you just give her . . . ," and Smith responded by raising his arm and loudly

saying, "no." Campbell Decl. Ex. 2 at 17:31:10-19. Yanes kept his hand on Smith's arm as he

directed Smith to "come over here right now, or you're going to go in cuffs," and when Smith

asked why, Yanes said he was "trying to calm the situation down." *Id*. at 17:31:17-22. Smith

responded in an agitated voice, "I *am* calm" as he tried to pull away from Yanes while also

saying, "no" and "don't." *Id.* at 17:31:23-32.

       As Smith tried to pull away, Yanes grabbed Smith's left wrist and arm and attempted to

place him in a control hold. *Id.*; Campbell Decl. Ex. 1 at 1. Yanes tried to push Smith toward the

vehicle and ordered Smith multiple times to "put your hands behind your back," while Smith

yelled out, "no," "don't fucking tell me . . . to fucking do that!" Campbell Decl. Ex. 2 at

17:31:23-43. As Yanes and Smith struggled with each other, Yanes ordered Smith "to get on the

ground!" and Smith continued to refuse. *Id*. When Yanes attempted to trip Smith, Smith grabbed

Yanes and they both fell to the ground. Rogan Smith Depo. 10, ECF 27-1. Yanes' body camera

was dislodged from his uniform during his struggle with Smith. Yanes Depo. 20; Campbell Decl.

Ex. 1 at 2; *id*. Ex. 2 at 17:31:35-43. There is no video of the struggle on the ground between

Yanes and Smith, but in the audio recording, an officer can be heard yelling, "stop resisting!"

and "get onto your stomach!" and Rita Smith can be heard shouting out, "Rogan just stop! Rogan

just stop! Rogan, please! Rogan, just stop. Stop resisting, please." Campbell Decl. Ex. 2 at

17:32:37-54.

       When Yanes and Smith fell to the ground, Smith was on top of Yanes. Yanes Depo 8.

Sergeant Monroe arrived, pushed Smith off Yanes, and gave Smith loud and clear commands to

stop resisting. Campbell Decl. Ex. 1 at 2. Yanes ordered Smith to roll onto his stomach, but

Smith refused. *Id.* Yanes "delivered approximately four focused blows toward [Smith]'s right

side of his face," and Sergeant Monroe deployed a taser, but it appeared to have no effect. Campbell Decl. Ex. 1 at 2; Yanes Depo. 9. Once a third officer arrived, they were able to roll Smith onto his stomach and place him in handcuffs. *Id.* When Smith was in handcuffs, he yelled out in pain repeatedly and pleaded for officers to use two handcuffs to relieve the strain on his arms, and the officers complied with his request. *Id.* Yanes did a quick pat down of Smith for weapons and found none. *Id.* Smith remained on the ground and asked repeatedly why he was being arrested and said more than once, "I didn't do anything." Campbell Decl. Ex. 2 at 17:35:50-59. Smith said, "please tell me why are you trying to take me to jail when that man over there punched my fucking sister?" *Id.* Smith told the officers, "I was not attacking anybody, I was trying to find out why he did what he did." *Id.* at 17:36:07-30.

When officers helped Smith to his feet, Smith said to Yanes, "sir, I wasn't trying to be aggravated at you; I don't understand why I got tackled." *Id.* at 17:39:10. In response, Yanes said that he observed Smith being "super aggressive" and had "no idea who was the suspect and no idea who was the victim" and wanted to "separate people" to control the situation. *Id.* at 17:39:11-30. Yanes told Smith, "you're not helping out by facing me aggressively and not obeying my commands." *Id.* at 17:39:30-39. Smith acknowledged that Yanes had told him to step away, and started to tell him, "if you had asked me nicely . . . "—when Yanes interrupted him to say, "that's now how it works." *Id.* at 17:39:26-46. When Smith said, "I wasn't trying to fight you, I wasn't trying to hit you," Yanes responded, "you were resisting though." Smith said, "yes, I'm going to resist because I don't want to be thrown on the ground because I am disabled." *Id.* at 17:40:11-19.

Yanes asked Smith what had happened before Yanes arrived, and Smith explained that Rita had called him for help with the road rage incident. *Id.* at 17:40:34-41:03. Smith

acknowledged that he had been angry and had raised his voice but said he would never hit anyone. *Id.* at 17:42:08-24. Smith said to Yanes, "you hit me—I don't know how many times in the head—and did I ever swing back?" *Id.* Yanes said, "no, but you were resisting." *Id.* Smith said once again that he did not want to be thrown to the ground, and said, "it hurts, I'm in a lot of pain from what you guys did to me." *Id.* at 17:42:25-30. Yanes told Smith paramedics were coming and would examine him. *Id.* As the exchange continued, Smith said that Yanes had caught him off guard by approaching him from behind but acknowledged that he had recognized Yanes as a police officer. *Id.* at 17:44:01-22. Smith told Yanes, "I didn't want to be forcibly removed from the situation . . . I wanted to find out what the hell that guy did to my sister." *Id.* at 17:44:22-24, 17:45:11-15.

When the EMTs arrived, they removed taser probes from Smith's right leg and cleared Smith for transport to the jail. Campbell Decl. Ex. 2 at 2. When Smith and Yanes arrived at the jail, Yanes took photographs of Smith that show facial abrasions and discoloration and swelling around his left eye. Pletch Decl. Ex. 1 at 37-43, ECF 33-1. Smith spent about nineteen hours in jail before he was released. Rogan Smith Decl. 14.

Based on the events above, a Crook County jury found Smith guilty of Resisting Arrest and not guilty of Disorderly Conduct in the Second Degree on August 11, 2021. Campbell Decl. Ex. 6, ECF 29-4 (verdict form in *State of Oregon v. Smith*, Case No. 19CR78675).

## PROCEDURAL HISTORY

On December 2, 2021, Plaintiffs filed a complaint asserting seven causes of action that alleged civil rights violations and state tort claims against Yanes, the City of Prineville ("City"), and Crook County. Compl., ECF 1. The initial complaint alleged claims involving both the initial

use of force and Smith's treatment in Crook County jail. *Id*. Each claim sought damages for loss of consortium. *Id.* at 7-15.

On May 8, 2023, Defendants filed a motion for summary judgment on all claims. *See* ECF 27. In response, Plaintiffs stipulated to the dismissal of Claims 3, 4, 5, 6, and 7. Resp. 11, ECF 33; Defs.' Sur-Reply 1-2, ECF 38. This stipulation included all claims concerning Smith's time in Crook County jail and all claims against Crook County. *Id*.

On September 9, 2023, this Court held oral argument on Plaintiffs' Fourth Amendment excessive force claim against Yanes (Claim 1), and Fourth Amendment excessive force claim against the City based on a failure to train (Claim 2). Both claims were brought by Rogan Smith and Kaleigh Smith. During oral argument, however, this Court noted that the Ninth Circuit has not recognized a claim for spousal loss of consortium claim under § 1983.

Following oral argument, Plaintiffs filed a supplemental brief that acknowledged that the Ninth Circuit has not recognized "a substantive due process or any other right to spousal loss of consortium vindicated by the [Fourteenth] Amendment." Supp. Br. 2, ECF 40. Nevertheless, Plaintiffs wished to preserve this claim for appellate purposes. *Id*. 2-3. Plaintiffs then filed a motion to amend that seeks to remove their stipulated claims and add two state tort claims "with associated state-law damages for Plaintiff Kaleigh Smith's loss of consortium." Mot. Amend 2.

Plaintiffs' motion to amend and Defendants' motion for summary judgment are addressed in turn below.

## DISCUSSION

### I.    Stipulated and Conceded Claims

As noted above, Plaintiff has stipulated to the dismissal of Claims 3, 4, 5, 6, and 7, which includes all claims against Crook County. Defendants are entitled to summary judgment on those

claims. Moreover, Plaintiff acknowledges that the Ninth Circuit has not recognized a claim for spousal loss of consortium claim under § 1983. *See Moore v. City of Bonner Ferry*, 2:22-CV-00376-BLW, 2023 WL 4561827, at *4 (D. Idaho, July 17, 2023). Accordingly, Defendants are entitled to summary judgment on any loss of consortium claims brought by Kaleigh Smith with respect to Claims 1 and 2.

## II.    Motion for Leave to Amend

### A.    Legal Standards

The decision to grant or deny leave to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When a scheduling order is in place, a motion to amend is evaluated under Federal Rule of Civil Procedure 16(b)(4) which provides that "'[a] schedule may be modified only for good cause and with the judge's consent.'" *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc*., 575 U.S. 373 (2015) (citing FED. R. CIV. P. 16(b)(4)). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992); *accord Zivkovic v. Southern California Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id*. (quoting Rule 16 advisory committee's notes (1983 amendment)). "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id*. The Ninth Circuit has emphasized that "the focus on the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id*

Once a party satisfies Rule 16's "good cause" standard, the party must then demonstrate that the amendment is proper under Rule 15. *Johnson*, 975 F.2d at 608. Under Rule 15, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Supreme Court has emphasized that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

### B.    Analysis

Defendants argue that Plaintiffs' motion to amend should be denied because the deadline to amend pleadings was April 2, 2022, and Plaintiffs fail to show good cause for this Court to modify the scheduling order. Resp. Mot. Amend 2-4, ECF 45. This Court agrees and denies Plaintiffs' motion to amend.

On December 3, 2021, this Court issued a Discovery and Pretrial Scheduling Order that required all pleadings to be filed within 120 days of the Order. ECF 2. Accordingly, Plaintiffs had until April 2, 2022, to file a motion to amend their complaint. Plaintiffs filed their motion to amend on October 18, 2023—more than eighteen months after the deadline had passed. Thus, "consideration of [P]laintiff's ability to amend the complaint is governed by Rule 16(b), not Rule 15(a)." *Eckert*, 943 F. Supp. at 1232 ("[u]pon expiration of the deadline established in a Rule 16 scheduling order, a party seeking to amend its pleadings must satisfy the standards of Rule 16 before amendment will be allowed"). Plaintiffs never requested an extension of filing deadlines.

Plaintiffs explain that they seek to add "parallel state-pendency claims to the already-existent federal claims," Mot. Amend 2-3, but to show good cause for modifying the scheduling

order Plaintiffs must "demonstrate diligence in seeking amendment." *See Eckert*, 943 F. Supp. at 1233 (noting that the "[p]laintiffs have not demonstrated diligence in pursuing the [new] claim, and thus failed to show good cause for allowing this tardy and potentially disruptive amendment"). Plaintiffs argue that they were unaware that their loss of consortium claim was nonviable until this Court raised the issue at oral argument, and they point out that "Defendants did not raise a claim that Plaintiffs' loss of consortium was federally unrecognized" until this Court brought it to the parties' attention. Reply Mot. Amend 2-3, ECF 46. Again, however, that fails to show diligence. Like the plaintiff in *Johnson*, "[t]he burden was upon [Plaintiffs] to prosecute [their] case properly. [They] cannot blame [Defendants—or this Court—] for [their] failure to do so." 975 F.2d at 610; *see also Eckert*, 943 F. Supp. at 1233 (finding that the plaintiff's counsel "failed to demonstrate diligence in seeking amendment" where he argued that "he did not receive the information he needed to allege the [new] claim" until after the deadline for amendment had passed). Moreover, as the court remarked in *Johnson*, "[d]isregarding . . . the [scheduling] order would undermine the court's ability to control its docket, disrupt the agree-upon course of the litigation, and reward the indolent and cavalier." 975 F.2d at 610.

In sum, Plaintiffs seek to amend their complaint more than eighteen months after the deadline passed and more than five months after Defendants filed their motion for summary judgment but fail to show "good cause" for this Court to modify the scheduling order. See FED. R. CIV. P. 16(b). Plaintiff's motion to amend is therefore denied.[1]

---

[1] Because Plaintiffs fail to demonstrate good cause to amend their complaint under Rule 16(b), this Court declines to address whether amendment would be proper under Rule 15. *See Eckert*, 943 F. Supp. at 1232 n.3 (where "the court finds that plaintiffs have failed to demonstrate good cause, it need not consider whether the proposed amendment would be proper under Rule 15(a)").

## II.     Motion for Summary Judgment

Defendants argue that Yanes is entitled to summary judgment on Plaintiffs' excessive force claim because Yanes used a reasonable amount of force to arrest Smith and is protected by qualified immunity. Mot. 16-20. Alternatively, Defendants argue that Plaintiffs' excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Id*. at 21-23. Defendants argue that the City is entitled to summary judgment on Plaintiffs' excessive force claim because there is no evidence that it failed to train officers on the use of force and no pattern of constitutional violations. *Id.* at 30-32.

This Court finds that Yanes is not entitled to summary judgment because (1) there are genuine issues of material fact as to whether Smith posed an immediate threat to anyone or resisted arrest once he was on the ground; (2) qualified immunity does not bar Plaintiffs' claim; and (3) Plaintiffs' claim is not barred by *Heck*. This Court finds that the City is entitled to summary judgment because there is no evidence of widespread civil rights violations.

### A.     Summary Judgment Standards

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the party asserting that a fact cannot be genuinely disputed must support that assertion with admissible evidence. FED. R. CIV. P. 56(c).

If the moving party establishes the absence of a genuine issue of material fact, the nonmoving party must go beyond the allegations in the complaint to demonstrate a genuine issue for trial. *Celotex*, 477 U.S. at 324. A party cannot defeat a summary judgment motion by relying

on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court views the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976).

### B.    Excessive Force Claim Against Yanes

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Under the Fourth Amendment, police officers are not required to use the least amount of force necessary to arrest a suspect. *Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010). Rather, officers are required to use an amount of force that is "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (internal quotation marks omitted); *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citing *Graham,* 490 U.S. at 397). The objective reasonableness inquiry requires "balancing the nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053-54 (9th Cir. 2007) (simplified).

"In assessing the objective reasonableness of a particular use of force, [courts] consider: (1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (*en banc*) (quoting *Glenn*, 673 F.3d at 871)). Moreover, where officers fail "to consider clear, reasonable, and less intrusive alternatives to the force employed[,]" that failure "militates against finding the use of force reasonable." *Id.* at 1124. This standard requires the court to "judge the reasonableness of a particular use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Rice*, 989 F.3d at 1121 (quoting *Graham*, 490 U.S. at 396).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.) (*en banc*), *cert. denied*, 545 U.S. 1128 (2005).

### 1.    The type and amount of force used

The evidence shows that Yanes grabbed Smith's wrist and arm in an attempted control hold and tripped and pushed him to the ground in a takedown maneuver. Under Ninth Circuit caselaw, the force Yanes used in bringing Smith to the ground constituted "minimal force." *See Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (finding that the police used "minimal" force to arrest the plaintiff where they "pushed her to the ground to handcuff her"); *see also Sandoval v. Officer Melvin of Winston Police Dep't*, 6:19-CV-00712-YY, 2021 WL

920858, at *6 (D. Or. Mar. 10, 2021), *aff'd sub nom. Sandoval v. Melvin*, 21-35213, 2022 WL

883744 (9th Cir. Mar. 24, 2022) (finding that "the amount of force used during both takedowns"

"was minimal" where the officer's actions consisted of "grabbing" and "pulling" the plaintiff

down to the ground "hard and fast with his knee in [her] back"). Once Yanes was on the ground

with Smith, his focused blows to Smith's face or head constituted significant or intermediate

force. *See Young v. Cnty. Of Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011) (finding pepper

spray and baton blows were "significant" or "intermediate force" because they "are forms of

force capable of inflicting significant pain and causing serious injury") (citations omitted); *see*

*also Garlick v. Cnty. Of Kern*, 167 F. Supp. 3d 1117, 1147 (E.D. Cal. 2016) ("[g]enerally, impact

blows by punching or kicking are considered 'significant force'"); *Aranda v. City of*

*McMinnville*, 942 F. Supp. 2d 1096, 1105 (D. Or. 2013) ("the degree of force used—focused

blows to the head, back, and side—was significant").

    Yanes says that Smith "showed no signs of pain or discomfort" when he was speaking

with the paramedics "and, in fact, regularly smiled, laughed, and joked with officials." Mot. 12.

While that may indicate that the blows to Smith's face or head had limited impact, an officer's

use of force is considered "significant" when it is "*capable* of inflicting significant pain and

causing serious injury." *Young*, 655 F.3d at 1162 (emphasis added); *cf. Bryan v. MacPherson*,

630 F.3d 805, 825 n.6 (9th Cir. 2010) (noting that "'[l]ethal force is force that creates a

substantial *risk* of death or serious bodily injury" (emphasis added)). Moreover, moments before

the paramedics arrived Smith also told Yanes that he was "in a lot of pain right now from what

you guys did to me." Campbell Decl. Ex. 2 at 17:42:25-30. Photographs of Smith show that he

had a black eye and facial abrasions, and Defendants acknowledge evidence that Smith suffered

post-traumatic stress syndrome from the incident. Mot. 18; Rogan Smith Depo. 2; Campbell

Decl. Ex. 2 at 2. Physical injuries are not necessary to make out a Fourth Amendment violation, but they are "certainly relevant in evaluating the degree of the Fourth Amendment intrusion." *Bryan*, 630 F.3d at 825. Therefore, viewing the evidence in the light most favorable to Plaintiffs, Yanes' punches were "'capable of inflicting significant pain and causing serious injury'" and therefore constituted "'significant force.'" *Garlick*,167 F. Supp. 3d. at 1147 (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)).

### 2.    The government interests at stake

To determine whether the government had a sufficiently strong interest at stake to justify Yanes' use of minimal and significant force, this Court must analyze: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Young*, 655 F.3d at 1163 (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

### a.    Severity of the crime

Yanes responded to a report of "a physical altercation between a male and female subject" and "[d]ispatch advised that the female subject had been hit in the head and had a cut on her arm from the altercation." Campbell Decl. Ex. 1 at 1. Because assault is a serious and violent felony, this factor can support an officer's use of force. *See Torres v. Russo*, CV1200932PHXROSMEA, 2014 WL 12693865, at *6 (D. Ariz. July 7, 2014), *aff'd sub nom. Torres v. Ray*, 680 F. App'x 541 (9th Cir. 2017) (noting that the "crime at issue . . . support[ed] that the force used was reasonable" because "felony aggravated assault . . . was a serious offense characterized by violence") (citing *Graham*, 490 U.S. at 396)); *Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1298 (D. Idaho 2011) (the "severity of the crime" *Graham* factor favored the

defendants where there was probable cause to believe the plaintiff had committed aggravated assaulted).

Although Smith was not involved in the road rage assault that had been reported to 911, Yanes reasonably viewed Smith as "the primary aggressor" in the situation that he encountered. Yanes Depo. 7. Plaintiffs argue that Yanes had "no indication . . . that [] Smith was the suspect," Resp. 7, but they concede that Smith was "angry," Resp. 7, and was "verbally accosting" the driver whom he believed had hit his sister, Rita. Compl. ¶20. Moreover, Yanes says that he observed a large man "kind of pointing and looking very agitated and upset . . . [and] . . . yelling" at a man and woman, Yanes Depo. 6-7, and the videotape of the incident shows Smith confronting a male and female who were standing against a parked vehicle as Yanes approached the group. Campbell Decl. Ex. 2 at 17:31:01-08. Because Yanes responded to a report of a stranger-on-stranger assault and Smith was the only subject behaving in an agitated manner when Yanes arrived, it was reasonable for Yanes to suspect that Smith was involved in the recent assault. Thus, this factor weighs in favor of Yanes using force.

### b.    Whether Smith posed a threat to Yanes or others

Plaintiffs argue that "Smith did not present a risk of harm to anyone" and insist that Smith offered no more than "passive resistance." Resp. 7. However, a Crook County jury found Smith guilty of Resisting Arrest which necessarily means that they found that Smith engaged in more than "passive resistance"—at least at some point during his encounter with Yanes. *See* Campbell Decl. Ex. 6 at 11 (jury instructions defining "resist" in *Oregon v. Smith*, Case No. 19CR78675).[2] Plaintiffs argue that Smith never became violent and was not armed. Resp. 4, 7.

---

[2] The jury instructions defined "resist" as follows:

Resists—use or threatened use of violence, physical force, or any other means that create a substantial risk of physical injury to any person and includes but is not

Again, however, Yanes was responding to a reported assault that involved a female victim and when he arrived, he saw a man of large stature, Smith, yelling at a man and woman with their backs against a parked vehicle. Yanes Depo. 7; Campbell Decl. Ex. 2 at 17:31:03-10. There is no question that Smith was upset, angry, and gesturing toward the man and woman. Yanes Depo. 6; K. Smith Depo. 6, ECF 27-2; Resp. Ex. 1 at 12; Campbell Decl. Ex. 2 at 17:31:01-10. Moreover, Smith described himself as "naturally intimidating and scary" and conceded that when he raises his voice, he "immediately look[s] intimidating and scary." Rogan Smith Depo. 7. Thus, when Smith ignored Yanes' directives to step away, put his hands behind his back, and get on the ground, it was reasonable for Yanes to have safety concerns and feel like he "needed to control the situation before [Smith] tried to either assault somebody or assault [Yanes]." Yanes Depo. 7.

However, once Yanes brought Smith to the ground and Smith was lying prone on his back, it is unclear whether Smith posed a threat to Yanes or anyone else. The struggle on the ground between Smith, Yanes, and possibly Sergeant Monroe was not captured on Yanes' body camera, and whether Smith posed a threat to anyone's safety largely depends on a jury's assessment of witness credibility. Yanes said that when he fell to the ground with Smith, he ended up underneath Smith and "[a]t that point . . . just held on to [Smith]s] arms to make sure I wasn't going to get struck by him or he was going to access any weapons." Yanes Depo. 8. When Sergeant Monroe pushed Smith off Yanes, he and Yanes both told Smith to roll onto his stomach, but Smith refused to comply. *Id.* Yanes says that he punched Smith in the face multiple

---

limited to behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. *Passive resistance does not constitute behavior intended to prevent being taken into custody*.

*Id.* (emphasis added).

times "in an effort to get him to comply with commands," *id.*, and based on "not knowing whether . . . Smith had weapons." Campbell Decl. Ex. 1 at 2. Because Yanes was responding to a stranger-on-stranger assault and Smith refused to comply with multiple commands from multiple officers, a reasonable jury could find that Yanes was reasonably concerned that Smith might be armed and might escalate the situation. On the other hand, Smith was not in fact armed, *see id.*, and there is no evidence that he ever threatened Yanes or anyone else or caused anyone harm or injury during his arrest. Thus, a reasonable jury could find that Smith posed no threat to anyone's safety while lying on the ground face up with two or more police officers present. Once Smith was on the ground, this factor weighs against the use of force.

### c.   Resisting arrest or attempting escape

As noted above, there is no dispute that Plaintiff was charged with and convicted of resisting arrest.[3] *See* Campbell Decl. Ex. 6 at 1 (verdict form from *State v. Smith*, No. 19CR78675). Furthermore, there is no genuine dispute that Smith actively resisted arrest when he ignored Yanes' commands to step away and to put his hands behind his back, and while he was pulling away from Yanes and resisting his efforts to push Smith against the car, put Smith's arms behind his back, and bring him to the ground. *See* Campbell Decl. Ex. 2 at 17:31:11-44; ORS 162.315(2)(a). Thus, this factor weighs in favor of Yanes using force to overcome Smith's resistance.

---

[3] Resisting Arrest is a misdemeanor offense under Oregon law. ORS 162.315 provides:

> A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

ORS 162.315(2)(a).

However, it is not clear whether the jury found that Smith actively resisted arrest once he was on the ground with Yanes, and the evidence does not clearly show that he was. Because there is a jury question as to whether Smith actively resisted arrest once he was on the ground, this factor weighs in favor of Smith.

### d.    The availability of alternative methods

Defendants argue that Yanes "attempt[ed] to de-escalate the situation without force," by telling Smith "to take a step back multiple times." Mot. 17. Yanes also warned Smith that he would be arrested if he failed to step away from the other subjects and explained that he was "trying to calm the situation down." Campbell Decl. Ex. 2 at 17:31:10-24. Although the situation escalated quickly and Yanes seized Smith's arm and started to push him toward the vehicle within twelve seconds of their encounter, there is no genuine dispute that Smith knew that Yanes was a police officer or that Smith heard and understood Yanes' multiple orders. *Id.*[4]

However, once Yanes and Smith were on the ground, there is no evidence that Yanes or anyone warned Smith before he was punched by Yanes. Yanes says that he and Sergeant Monroe tried to roll Smith onto his stomach before Yanes "delivered focused blows to [Smith's] face in an effort to get him to comply," Yanes Depo. 9, but Yanes or Monroe could have warned Smith or called for additional officer assistance, which would have been far less intrusive than punches to Smith's face. In fact, when a third officer arrived within moments of Yanes' punches, the officers were able to roll Smith onto his stomach. Campbell Decl. Ex. 1 at 2.

---

[4] Plaintiffs insist that "[t]here is . . . an issue of material fact whether [] Smith was even initially aware that [] Yanes was a police officer when [] Yanes placed his hands on [] Smith within 12 seconds of his unannounced arrival," Resp. 7, but in the immediate aftermath of the incident Yanes asked Smith twice if he recognized that Yanes was a police officer when Yanes first arrived and walked up to Smith, and Smith said, "yeah." Campbell Decl. Ex. 2 at 17:44:18-24.

Thus, this factor weighs in favor of Yanes regarding the control hold and takedown maneuver, but not regarding the punches that Yanes delivered to Smith's face and head. *See Young*, 655 F.3d at 1165 (finding that the officer "could have warned [the suspect] . . . that disobedience would lead [the officer] to use [significant] force against him . . . or he could have called for assistance").

### 3. The Necessity for the Force Used

Last, this Court must "balance the force that was used by the officers against the need for such force to determine whether the force used was greater than reasonable under the circumstances." *Espinosa v. City and Cnty. of S.F.,* 598 F.3d 528, 537 (9th Cir 2010) (simplified). This determination is judged from the perspective of a reasonable officer on the scene. *Graham*, 490 U.S. at 396-97.

Here, no reasonable jury could find that Yanes used excessive force when he grabbed Smith's arm and used a takedown maneuver. Even viewing the evidence in the light most favorable to Plaintiffs, the record shows that Yanes responded to a stranger-on-stranger assault and reasonably suspected that Smith was involved; Smith actively resisted arrest, despite Yanes' warning, and received no significant injuries from Yanes' takedown. Thus, Yanes is entitled to summary judgment on Plaintiffs' excessive force claim regarding Yanes' use of force in bringing Smith to the ground. *See Krause v. Vancouver Police Dep't*, 322CV05204BHSGJL, 2023 WL 7286999, at *6 (W.D. Wash. Oct. 4, 2023), *report and recommendation adopted*, C22-5204 BHS, 2023 WL 7280904 (W.D. Wash. Nov. 3, 2023) (entering summary judgment for the defendants on excessive force claim where "[the p]laintiff was suspected of a domestic assault . . . [and] actively resisted arrest" and where "the officers used a controlled takedown method, and . . . [the p]laintiff received minimal injuries from the takedown").

However, when Yanes punched Smith's face and head at least four times, a reasonable jury could find that Yanes used more force than was reasonable or necessary under the circumstances. The evidence shows that Smith suffered significant pain, a black eye, facial abrasions, and PTSD, and there is a genuine dispute as to whether Smith actively resisted arrest on the ground or posed a threat to anyone's safety, and whether there were less intrusive alternatives to Yanes' use of significant force. Thus, Yanes is not entitled to summary judgment on Plaintiffs' excessive force claim regarding his punches to Smith's face and head. *See Young*, 655 F.3d at 1165-1166 (finding the government had "limited" interest in the use of "significant force" where the officer "had a variety of less intrusive options at his disposal" that were "less painful and potentially less injurious").

### B.    Qualified Immunity

Defendants argue that "if there [are] facts to support that Yanes used excessive force in restraining [Smith], Yanes [is] still is entitled to qualified immunity." Mot. 19. To overcome qualified immunity, Plaintiffs must show that Yanes (1) "violated a federal statutory or constitutional right," and (2) "the unlawfulness of [his] conduct was clearly established at the time." *D.C. v. Wesby*, 583 U.S. 48, 62-63 (2018) (simplified).

This Court cannot resolve the parties' dispute as to whether Yanes punching Smith violated constitutional rights that were clearly established at the time of the incident. This is because Plaintiffs' and Defendants' arguments turn on the same factual disputes that bar summary judgment for Yanes based on Yanes punching Smith when the parties were on the ground—*i.e.*, whether Smith posed an immediate threat to Yanes, whether Smith actively

resisted arrest, and whether there were less intrusive alternatives available.[5] *See Espinosa*, 598 F.3d at 532 (affirming a denial of summary judgment on qualified immunity grounds because "there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights" that were "also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions"); *see also Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) (noting that, "[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate"); *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law . . . may depend on the jury's resolution of disputed facts and the inferences it draws therefrom" (citation omitted)).

Based on the record before this Court, a reasonable jury could find that Smith offered only passive resistance on the ground and posed no danger to Yanes or others, and that Yanes could have used less intrusive alternatives. But a reasonable jury could also find that Smith actively resisted arrest when he was on the ground and posed a threat to Yanes. Because resolution of these factual disputes is necessary to determine whether Yanes violated Smith's constitutional rights that were clearly established, Yanes is not entitled to summary judgment on the basis of qualified immunity.

---

[5] Defendants argue that Yanes is entitled to qualified immunity because "[Smith] physically resisted arrest and posed an immediate threat of safety to Yanes." Mot. 20. Plaintiffs argue that Yanes is not entitled to qualified immunity because there were less intrusive alternatives available such as a warning and because "Smith's conduct . . . constituted close to if not passive resistance." Resp. 8.

C.    *Monell* **Claim Against the City**

Plaintiffs bring a *Monell* claim against the City alleging that the City failed to sufficiently train police officers on the use of force. Compl. ¶¶47-49. Defendants argue that Plaintiffs' *Monell* claim cannot survive summary judgment because the City provided its police officers adequate training on the use of force and there is no evidence of widespread constitutional violations.

In *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Id.* at 694. To establish *Monell* liability, a plaintiff must allege that (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (simplified).

A failure to train can constitute "a city policy or custom" that is actionable under § 1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *accord Connick v. Thompson*, 563 U.S. 51, 61 (2011) (same). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (simplified). Thus, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "Without notice that a course of training is

deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Furthermore, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (noting that a failure to train claim must show "a widespread practice" and "a showing that a single employee was inadequately trained" is not sufficient to show such a practice).

Plaintiffs argue that there is an issue of material fact regarding the City's failure to train, but they fail to cite a single Fourth Amendment violation involving Prineville police let alone evidence of widespread violations. Instead, they argue that Yanes was inadequately trained and rely *solely* on the report of Adam Bercovici, an expert on police practices, who stated the following: "It appears that [the City] has intentionally not included de-escalation in its use of force policy . . . without proper de-escalation training, officers can and will improperly use force that is not objectively reasonable." Pletch Decl. Ex. 1 at 17-18. Defendants dispute that the City's training on excessive force was inadequate. Mot. 31-32. However, even assuming that the City failed to include training on de-escalation, there is no evidence that it was the "moving force" behind the alleged violation of Smith's rights or that the City "was faced with a pattern of similar constitutional violations by untrained employees" that would "put the [City] on 'notice that a course of training is deficient in a particular respect[.]'" *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing *Connick*, 563 U.S. at 61-62) (noting that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). Because Plaintiffs have failed to plead or prove that the alleged deficiencies

in the City's training program caused Smith's injuries or widespread violations of other citizens' rights, no reasonable jury could find that the City had practice or custom of showing deliberate indifference to the rights of citizens. The City is therefore entitled to summary judgment on Plaintiffs' *Monell* claim.

        **D.**    ***Heck* Doctrine**

Defendants argue that Plaintiffs' excessive force claim against Yanes is barred by *Heck*, 512 U.S. 477. Mot. 21-23. In *Heck*, the Supreme Court held that a court must dismiss a § 1983 claim if it seeks to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid[.]" 512 U.S. at 486. Where a judgment in favor of a plaintiff in a § 1983 suit "would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

Here, Smith was convicted of Resisting Arrest under Oregon Revised Statute ("ORS") 162.315 which means that the jury found that Smith: (1) knew that Yanes was making an arrest, (2) knew that Yanes was a peace office, and (3) intentionally resisted Yanes in making the arrest. *See* Campbell Decl. Ex. 6 at 9 (jury instructions in *State v. Smith*, No. 19CR78675). Thus, under *Heck*, the question is whether Plaintiffs' surviving § 1983 claim—alleging excessive force based on Yanes punching Smith—"'would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid.'" *Lemos v. County of Sonoma*, 40 F.4th 1002, 1006-07 (9th Cir. 2022) (citing *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (emphasis in original)). As noted above, it is possible that the jury convicted Smith of Resisting Arrest based only on his conduct toward Yanes when they were both standing on their feet and not based on Smith's conduct once he fell to the ground with Yanes. Because it not clear whether the jury convicted

Smith of resisted arresting on the ground, his surviving § 1983 claim against Yanes would not *necessarily* imply the invalidity of that conviction. *See Smith*, 394 F.3d at 699 (noting that "[the plaintiff] would be allowed to bring a § 1983 action . . . if the use of excessive force occurred *subsequent to* the conduct on which his conviction [for resisting arrest] was based" (emphasis in original)); *accord*, *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (holding that a conviction for resisting arrest under California law "does not bar a claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions").

Defendants' reliance on *Lemos* is misplaced. In *Lemos* the plaintiff was convicted of resisting arrest under California law which meant that a jury found that she "willfully resisted . . . a peace officer . . . engaged in the performance of his or her duties," and "California courts have held that an officer who uses excessive force is acting unlawfully and therefore is not engaged in the performance of his or her duties." 40 F.4th at 1006. Here, in contrast, when Smith was convicted of Resisting Arrest, the jury was not required to find that Yanes had not used excessive force. *See* ORS 162.315. Even if the jury were required to make such a finding, Plaintiffs' § 1983 claim would still not *necessarily* imply the invalidity of Smith's conviction because, once again—and as the Ninth Circuit noted in *Lemos*—the jury may have found Smith guilty of Resisting Arrest "based on one of several different events." 40 F.4th at 1007-08 (holding that "[the plaintiff]'s success in the section 1983 action would not necessarily contradict the verdict [finding her guilty of resisting arrest]" because the jury was instructed that she could be found guilty "based on one of several different events"). Accordingly, Plaintiffs' excessive force claim against Yanes is not barred by *Heck.*

**CONCLUSION**

Based on the foregoing, Plaintiff's Motion to Amend is DENIED. ECF 44. Based on

Plaintiffs' stipulations and concessions, Defendants are entitled to summary judgment on Claims

3, 4, 5, 6, and 7 and the loss of consortium claims brought by Kaleigh Smith with respect to

Claims 1 and 2. Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs'

excessive force claim against Yanes based on his punches to Smith's face (Claim 1) and

GRANTED as to Plaintiffs' *Monell* claim against the City (Claim 2). ECF 27.

IT IS SO ORDERED.

DATED February 23, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge